# STATE OF NORTH CAROLINA

File No.

14 CVS 697

Beauport _____ County

In The General Court Of Justice
☐ District ☒ Superior Court Division

| Name Of Plaintiff | |
|---|---|
| TOWN OF BELHAVEN, NC, ET AL | |
| Address | **CIVIL SUMMONS** |
| P.O. Box 220 | ☐ ALIAS AND PLURIES SUMMONS (ASSESS FEE) |
| City, State, Zip | |
| Belhaven, NC 27810 | G.S. 1A-1, Rules 3, 4 |
| VERSUS | Date Original Summons Issued |
| Name Of Defendant(s) | |
| PANTEGO CREEK, LLC, ET AL | Date(s) Subsequent Summons(es) Issued |

**To Each Of The Defendant(s) Named Below:**

| Name And Address Of Defendant 1 | Name And Address Of Defendant 2 |
|---|---|
| Pantego Creek, LLC | University Health Systems of Eastern |
| Arey W. Grady, III, Registered Agent | Carolina, Inc. d/b/a Vidant Health, |
| 416 Pollock Street, P.O. Box 889 | Registered Agent, David C. Herman, MD |
| New Bern, NC 28563-4947 | 800 W H Smith Blvd. |
| | Greenville, NC 27834 |

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (If None, Address Of Plaintiff) | Date Issued | Time | ☐ AM |
|---|---|---|---|
| John B. Tate III | 8-14-14 | 1:32 | ☒ PM |
| Attorney at Law | Signature | | |
| P.O. Box 700 | _Karen C Wood_ | | |
| Chocowinity, NC 27817 | ☒ Deputy CSC ☐ Assistant CSC ☐ Clerk Of Superior Court | | |

| ☐ ENDORSEMENT (ASSESS FEE) | Date Of Endorsement | Time | ☐ AM |
|---|---|---|---|
| This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | Signature | | ☐ PM |
| | ☐ Deputy CSC ☐ Assistant CSC ☐ Clerk Of Superior Court | | |

**NOTE TO PARTIES:** *Many counties have MANDATORY ARBITRATION programs in which most cases where the amount in controversy is $15,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

(Over)

AOC-CV-100, Rev. 6/11
© 2011 Administrative Office of the Courts

Case 4:14-cv-00151-D   Document 1-1   Filed 08/19/14   Page 1 of 27

NORTH CAROLINA

COUNTY OF BEAUFORT

IN THE GENERAL COURT OF JUSTICE

SUPERIOR COURT DIVISION

14 CVS 697

TOWN OF BELHAVEN, NC; and THE )
NORTH CAROLINA NAACP STATE )
CONFERENCE OF BRANCHES, THE )
HYDE COUNTY NAACP BRANCH, and )
THE BEAUFORT COUNTY NAACP )
BRANCH, )
     Plaintiffs )
                           )
                           )
         v. )
                           )
                           )
PANTEGO CREEK, LLC; and )
VIDANT HEALTH, INC. )
     Defendants      ·)

COMPLAINT AND MOTION
FOR TEMPORARY
RESTRAINING ORDER

NOW COMES the Plaintiff and states as follows:

**PARTIES**

1.    Plaintiff TOWN OF BELHAVEN ("Town") is a North Carolina municipal corporation located in Beaufort County. One of its primary purposes is to maintain and improve the health and safety of the Town residents. In 1948, it was a key entity in locating a federally-funded hospital, open to all, under the Hill-Burton Act, in the heart of downtown Belhaven and the Town has helped finance, manage, recruit and hold doctors and other staff for the Hospital for three score years.

2.    Plaintiff NORTH CAROLINA STATE CONFERENCE OF THE NAACP and two of its Branches, the Hyde County NAACP Branch and the Beaufort County NAACP Branch ("NAACP") is a nonpartisan, nonprofit organization composed of over 100 branches and 20,000 individual members throughout the state of North Carolina. The North Carolina NAACP has members and friends in the two counties that are served by the Hospital which has been known as the Pungo District Hospital ("Hospital") for over sixty years. The abrupt closing of the Hospital by Defendants on 1 July 2014 has and will continue to disparately and directly impact and harm NAACP members, and other people of color who look to the NAACP to advocate for their human rights and health care.

3.     In furtherance of its only mission—to eliminate race discrimination in our society--the NAACP advocates to ensure the health interests of African-Americans and other people of color are of equal importance in the corporate decisions of large institutions, particularly those who receive massive amounts of federal tax payer dollars.

4.     Upon information and belief, Defendant Vidant Health ("Vidant") is a North Carolina non-profit corporation whose principal office is located in Pitt County, North Carolina.

5.     Upon information and belief, Defendant Pantego Creek, LLC ("Pantego") is a North Carolina non-profit limited liability company whose principal office is located in Beaufort County, North Carolina.

6.     Upon information and belief, Vidant helped to create the Pantego Creek, LLC in 2011, when Vidant negotiated a transfer of the Hospital to itself, and Vidant has paid for the bulk of, if not all, of the newly formed LLC and its operating expenses since.

**FACTS**

7.     On 24 July 2014, Defendant Pantego filed a Deed in Beaufort County claiming it was the fee simple owner of the real property and the Hospital on Water Street. The Non-Warranty Deed recorded in Book 1850, page 87, in the Office of the Register of Deeds of Beaufort County is attached hereto and incorporated in this complaint, as Exhibit A.

8.     According to Plaintiff's Exhibit A, Defendant Vidant, d/b/a Pungo District Hospital, conveyed all the real property and improvements it owned to Pantego on 2 July 2014.

9.     The Plaintiffs and Vidant voluntarily participated in several mediations conducted by the US Department of Justice in May 2014, and they signed an historic Agreement that Vidant would transfer any interest it had in the Hospital and real property to the Town, as described in the agreement attached hereto as Plaintiff's Exhibit "B" ("Agreement").

10.     Vidant did not transfer the property to The Town, nor did it maintain the property up to 1 July 2014, and has continued to let the hospital deteriorate until 24 July 2014, when the Deed was filed to transfer the property to Pantego, and since then there have been several incidents that indicate Vidant still controls the Property, and is allowing it to further deteriorate, in what Belhaven residents and the Town Council have called demolition by neglect.

11.     Plaintiff NAACP filed a Title VI Complaint with the US Department of Justice and the Office of Civil Rights of the US Department of Health and Human Services ("HHS") regarding the impact of the Hospital closing on racial minorities and low-income citizens in the area

surrounding the Property.

12.     When it became evident that Vidant was not going to maintain the Hospital and transfer it to the Town of Belhaven and the new Community Board it had commissioned in late June 2010, the NAACP filed an amended Title VI Complaint, that added the Pantego Creek, LLC as a respondent. It is attached as Exhibit C.

13.     Defendant Vidant has represented to Plaintiffs that it has no plans to demolish the Hospital, but cautioned that it could not speak for Pantego.

14.     The Office of Civil Rights of the U.S. Department of Health and Human Services has expedited its investigation of the Title VI complaint. HHS officials in charge of innovative grants for small rural hospitals, like The Hospital, have provided good information about how to seek funding to make The Hospital a Model Rural Community Hospital.

15.     Town officials have observed equipment and other items being removed from the Property in recent days.

16.     On August 13, 2014, a crane arrived at the Property, and the driver of the crane said he believed the crane was to remove large equipment from the Hospital.

17.     Upon information and belief, on August 11, 2014, a representative from Vidant stated to the Belhaven Building Official that electrical equipment was being removed from the Property and that, upon completion of such removal in a week to ten days, the air conditioning and de-humidifiers would be without power.

18.     Upon information and belief, if the air-conditioning and de-humidifiers are turned off, the growth of mold and mildew will accelerate, rendering the Hospital unusable soon thereafter.

19.     Upon information and belief, Defendants have withheld information and have not acted in good faith in the performance of their duties under the Agreement, and have not participated in efforts by the Mediator to dispute resolution processes, as was agreed, to deal with the substantial disagreements that have arisen in effectuating the Agreement.

20.     Upon information and belief, Vidant offered to pay for demolition of the improvements on the Property to members of the Pantego Creek LLC.

21.     Upon information and belief, Vidant has a financial interest in closing the Hospital by sending patients from the Belhaven area to its hospitals in Washington, NC and Greenville, NC.

22.     Upon information and belief, closing the Hospital has resulted, and will result, in a significant degradation of medical services to citizens in protected classes, specifically minority

and poor persons.

23.     The Town continues to prepare its business and management plan for a Model Rural Hospital to assume management of The Hospital as soon as possible.

24.     The Mayor of the Town is considering initiating eminent domain proceedings pursuant to §160A-240.1 and 40A-1 et. seq. to obtain ownership of the Property, and has scheduled a special meeting of the Town Council to consider the matter.

## FIRST CLAIM FOR RELIEF - VIOLATION OF CIVIL RIGHTS

25.     Paragraphs 1-24 are hereby incorporated by reference into this Claim for Relief.

26.     Defendants have violated, and continue to violate, the civil rights of the citizens of Belhaven and surrounding areas by closing the Hospital, removing equipment and beginning demolition of buildings at the Property insofar as their conduct will have a disproportionate impact upon protected classes of citizens.

27.     Upon information and belief, Defendants intend to do irreparable harm to the Plaintiffs by rendering the buildings at the Property unusable, by neglect and by active demolition.

## SECOND CLAIM FOR RELIEF - UNFAIR TRADE PRACTICE

28.     Paragraphs 1-27 are hereby incorporated by reference into this Claim for Relief.

29.     Upon information and belief, Vidant planned to close the Hospital at the time Vidant bought the Hospital in 2011.

30.     Vidant's purchase of the Hospital with the intent to close it and thereby eliminate the possibility of competition in Belhaven constitutes an unfair trade practice in violation of N.C.G.S. 75-1.1.

31.     Defendants' completion of the closing and further active and passive demolition of the Hospital Property will result in the complete preclusion of competition in Belhaven and the surrounding area.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays that the Court:

1.     Issue a temporary restraining order requiring Defendants to cease and desist in removing equipment from the Hospital and all other demolition activities, and to continue to maintain and air-conditioning and de-humidifying systems to to prevent the further growth of

mold and mildew in the buildings located on the Property and to cease in otherwise causing the condition of the Hospital buildings to deteriorate.

    2.     Require Defendants to allow Plaintiffs reasonable access to the Property.

    3.     Schedule a hearing on Plaintiff's Complaint and Motion for Temporary Restraining Order within fifteen (15) days from entry of the Temporary Restraining Order.

    4.     Grant any other and further relief which the Court deems just and proper.

This the 13 day of August, 2014.

John B. Tate III
North Carolina State Bar #29822
Attorney for the Town of Belhaven, Plaintiff
P.O. Box 700
Chocowinity, NC 27817
Tel: 252-974-1122
Fax: 252-974-1222

Alan McSurely
North Carolina State Bar #15540
Attorney for North Carolina NAACP
McSurely & Turner, PLLC
109 N. Graham St., Suite 100
Chapel Hill, NC 27516
Phone: (919) 967-3311
Fax: (919) 444-2474

## VERIFICATION

Adam O'Neal, being first duly sworn, deposes and says that he is the Mayor of the Town of Belhaven in the foregoing Complaint, that he has read the same and knows the contents thereof, that the same is true of his own knowledge, except as to those matters and things alleged therein upon information and belief, and as to those things, he believes them to be true.

This the 13th day of August, 2014.

SWORN TO AND SUBSCRIBED before me
this the 13th day of August, 2014.

Notary Public

My commission expires: 09-16-2014

NO REAL ESTATE
TAX PAID

BEAUFORT COUNTY LAND RECORDS

ROUTING FORM __41351__

_HMM_          _7-24-14_
Land Records Official     Date

FOR REGISTRATION REGISTER OF DEEDS
Jennifer Leggett Whitehurst
Beaufort County, NC
July 24, 2014  11:48:41 AM
Book 1850 Page 87-93
FEE: $26.00
INSTRUMENT # 2014003247



INSTRUMENT # 2014003247

# NORTH CAROLINA NON-WARRANTY DEED

Revenue stamps: $0.00 pursuant to N.C.G.S. §105-228.29

Prepared by:

David E. Wagner*, K&L Gates LLP
4350 Lassiter at North Hills Avenue, Suite 300
Raleigh, North Carolina 27609
*No Title Review Performed

Upon Recording, return to:     Grantee

_return ⟶_ Sumrell, Sugg, Carmichael,
Hicks, & Hart, PA
416 Pollock Street
New Bern, NC 28560

Brief Description for Index: Vidant Pungo Hospital

THIS DEED made effective this _2nd_ day of July, 2014, by and between

| GRANTOR | GRANTEE |
|---|---|
| Pungo District Hospital Corporation, a North Carolina non profit corporation | Pantego Creek, LLC, a North Carolina * limited liability company |
| with a mailing address of:<br>c/o Vidant Health<br>Attention: Office of General Counsel<br>2100 Stantonsburg Road<br>Greenville, North Carolina 27835-6028 | with a mailing address of:<br>416 Pollock Street<br>New Bern, North Carolina 28560<br><br>* non-profit |

The designation Grantor and Grantee, as used herein, shall include said parties, their heirs, successors, and assigns, and shall include singular, plural, masculine, feminine or neuter as required by context.

WITNESSETH, that Grantor, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, has and by these presents does grant, bargain, sell, and convey unto Grantee in fee simple, all of the right, title, and interest of Grantor in and to

RA-3124008 v2

PLAINTIFFS' EXHIBIT "A"

Case 4:14-cv-00151-D   Document 1-1   Filed 08/19/14   Page 8 of 27

those certain tracts and parcels of land situated in Belhaven, Beaufort County, North Carolina, and more particularly described on Exhibit A attached hereto and incorporated herein by reference (the "Property").

TOGETHER WITH all buildings, structures and other improvements located thereon, and all appurtenances thereunto.

None of the Property herein conveyed includes the primary residence of Grantor.

TO HAVE AND TO HOLD the aforesaid Property and all privileges and appurtenances thereto belonging to the Grantee in fee simple, subject to the foregoing right of reversion.

**The Grantor makes no warranty, express or implied, as to title to the Property hereinabove described.**

[Signature and Notarial acknowledgment page follows]

IN WITNESS WHEREOF, Grantor has duly executed this instrument and delivered it as of the date indicated on the first page of this Deed.

GRANTOR:

Pungo District Hospital Corporation, a North Carolina non profit corporation

By _____
Name: Roger A. Robertson
Title: President and Designated Agent,
DB 1804, PG 230

_____Pitt_____ County, North Carolina

I certify that the following person personally appeared before me this day and acknowledged to me that he signed the foregoing document in the capacity indicated: Roger A. Robertson

Date: July 2, 2014
My Commission Expires: 8/24/2018 _____Melody J. Kissinger_____
                                        Notary Public

                        Print Name: Melody J. Kissinger

[Affix Notary Stamp or Seal below]

MELODY J KISSINGER
NOTARY
PUBLIC
PITT COUNTY, N.C.

## EXHIBIT A

Tract One

That portion of Allen Street in said Town of Belhaven 100 feet in width extending from Front or Water Street southwestwardly to Pantego Creek, reference being made to the map made by Norfolk Southern Railroad Company for a more accurate description thereof of record in Map Book 2, page 40, Beaufort County Registry and being the same tract or parcel of land conveyed by the Town of Belhaven to Pungo District Hospital Corporation by Deed dated January 20, 1948, of record in Book 379, page 185, Beaufort County Registry. See also instrument dated January 28, 1948 of record in Book 379, page 274, Beaufort County Registry whereby George W. Clark, owner of all property abutting said portion of Allen Street on the East and his wife, Gladye E. Clark released and quitclaimed unto Pungo District Hospital Corporation all right, title and interest which they may have or may assert in and to that portion of Allen Street herein described.

Tract Two

Beginning at the Southwest intersection of Water and Allen Streets in Belhaven, it being the Northeast corner of Lot No. 432 in Block 5, as shown on the map made by Norfolk Southern Railroad Company; thence with Water Street Westwardly 75 feet; thence Southwardly at right angles to Water Street and parallel with Allen Street extended to the waters of Pantego Creek; thence Eastwardly with the waters of Pantego Creek to a point intersected by the West line of Allen Street, if projected; thence Northwardly with the West line of Allen Street projected to the beginning, and being the same tract or parcel of land conveyed to Pungo District Hospital Corporation by deed dated January 20, 1948, of record in Book 379, page 184, Beaufort County Registry.

Tract Three

In the Town of Belhaven, Beaufort County, North Carolina, and being situate on the southwest side of Water or Front Street in said town and being all of Lot No. 433 on the Norfolk Southern Railroad Company's map of a part of the Town of Belhaven, as described in that certain deed dated March 14, 1950, from Orville R. Clark and wife, Helen M. Clark, to George W. Clark of record in Beaufort County Registry, and being also an additional strip 12 feet wide lying on the southeast side of said Lot No. 433 between parallel lines run southwestwardly from Front Street to Pantego Creek; and the total lot herein conveyed being a composite of said Lot No. 433 and 12 feet of the old Snyder lot on the southeast side thereof, making a lot beginning at the intersection of Allen and Front Streets, running southeastwardly 62 feet with Front Street and extending back to Pantego Creek between parallel lines and parallel to and adjoining Allen Street on the northwest side thereof. And being the same conveyed to Ellis G. Winstead, M.D., by Nina Clark Powell and husband Douglass A. Powell, Jr., by deed dated October 24, 1958, of record in Book 490, page 377, of the Beaufort County Registry, and also being the same tract or parcel of land conveyed to Pungo District Hospital Corporation by deed dated June 27, 1972 of record in Book 684, page 675, Beaufort County Registry.

## Tract Four

In the Town of Belhaven, bounded on the North by Water Street; on the East by the line of the property conveyed to the Town of Belhaven by the Norfolk Southern Railroad Company by deed dated February 15, 1928, recorded in Book 318 Page 136 of the Beaufort County Registry, Map of same being recorded in Map Book 2 at Page 40 same Registry; bounded on the South by Pantego Creek; and bounded on the West by the lot conveyed by George W. Clark and wife, Glayde B. Clark, to Nina Clark Powell and husband, Douglass A. Powell, Jr., by Deed dated May 29, 1950, and duly recorded in Beaufort County Registry, said lot now being owned by the Dr. E.G. Winstead estate; and being all of the balance of Block No. 6 of the Norfolk Southern Railway Company's Map of part of Belhaven conveyed to the said George W. Clark by the Norfolk Southern Railway Company on the 5th day of May, 1944, by Deed recorded in Book 351 page 480 of the Beaufort County Registry. Excepting from this conveyance the aforementioned Powell lot, the said Powell lot having a frontage of 62 feet on Water Street measured Southeastwardly from the Southeast edge of Allen Street, the Southeast line of the Powell lot; running thence Northeastwardly parallel to the aforesaid Allen Street to Water Street and forming the Westward or Northwestward boundary of the lot herein conveyed. The Eastward line of the above mentioned lot was fixed by exchange of Deeds between the Town of Belhaven and Doris Whitley Windley as follows:

> Beginning at the Northward end at a four inch iron pipe set into the ground, said iron pipe being set 17 feet and 4 inches from the Northeast corner of the porch of the Windley home and approximately 80 feet Eastward of Windley's West line; running thence a general Southwardly direction a straight line to a 1½ inch iron stab set in the ground at the edge of Pantego Creek, this point being approximately 90 feet Eastward of Windley's west line.

The above described tract or parcel of land is the same tract or parcel of land conveyed to Pungo District Hospital, Incorporated by deed dated September 3, 1969, of record in Book 645, page 528, Beaufort County Registry. And also being the same tract or parcel of land a portion of which is described in quitclaim deed dated July 2, 1997, from the Town of Belhaven to Pungo District Hospital Corporation of record in Book 1076, page 887, Beaufort County Registry.

The four (4) above described tracts or parcels of land bear Beaufort County GPIN Nos. 7605-69-9132 and 7605-78-0943.

## Tract Five

In the Town of Belhaven, Beaufort County, North Carolina and being so much of the abandoned westwardly portion of Front or Water Street as adjoins the northeast boundary line of Tract One through Tract Four described above as shown by Resolution of the Town of Belhaven dated July 2, 1990, of record in Book 928, page 405, Beaufort County Registry.

## Tract Six

Beginning at a new iron pipe located in the southwesterly edge of the 60 foot right of way of Water Street and lying South 33° 27' 50" East 188.58 feet from a new PK nail set at the

intersection of the centerlines of Allen Street and Water Street as the same is shown on a plat entitled "Property of Pungo District Hospital" dated November 15, 1996 by Jarvis Associates, P.A., a copy of which is recorded in Plat Cabinet F, Slide 7-8, Beaufort County Registry and incorporated herein by reference for a more complete and adequate description, running thence from said beginning point so located South 41° 04' 55" East 57.82 feet to a new iron pipe; thence the same course continued 5.00 feet to a point in the outside face of a bulkhead along the westerly edge of Wynne's Gut; thence along the outside face of said bulkhead the following courses and distances: South 36° 59' 33" West 230.29 feet to a point, South 38° 51' 49" East 7.89 feet to a point, South 36° 04' 17" West 139.28 feet to a point, North 89° 47' 25" West 15.12 feet to a point, North 11° 09' 14" West 38.63 feet to a point, and North 21° 07' 03" West 42.70 feet to a point; thence leaving said bulkhead and running North 50° 30' 00" East 5.00 feet to a new iron pipe; thence the same course continued 19.77 feet to a new iron pipe; thence North 36° 59' 33" East 321.10 feet to the point of beginning, containing 0.54 acres, more or less. Reference is made to deed recorded in Book 318, page 136, Beaufort County Registry, and being the same tract or parcel of land conveyed to Pungo District Hospital Corporation by deed dated July 2, 1997 of record in Book 1076, page 884, Beaufort County Registry and also being the same tract or parcel of land a portion of which is described in quitclaim deed dated July 2, 1997 from Town of Belhaven to Pungo District Hospital Corporation of record in Book 1076, Page 887, Beaufort County Registry.

The above described tract or parcel of land bears Beaufort County GPIN No. 7605-78-1935.

Tract Seven

Beginning at a point in the northern high water mark of Pantego Creek at the westernmost corner of the lot owned by Pungo District Hospital as the same is shown on a map of survey entitled "Property of Gregory L. Jones and Rebecca Jones" dated December 11, 1989 and revised June 3, 1991 by Hood Richardson, R.L.S. and recorded in Plat Cabinet E, Slide 55-3; running thence with Pungo District Hospital's western boundary North 50 degrees 30 minutes 00 seconds East 347.77 feet to an iron pipe located in the southwestern right-of-way of Water or Front Street; thence with the said right-of-way North 39 degrees 30 minutes 00 seconds West 75 feet to an iron pipe; thence South 50 degrees 30 minutes 00 seconds West 317.50 feet to a point in the northern high water mark of Pantego Creek; thence in a southerly direction with the high water mark of Pantego Creek to the point of beginning, containing 0.56 acres, more or less. Reference is made to a Deed to Dr. J.T. Wright dated June 26, 1953 and recorded in Book 430, Page 380 Beaufort County Registry. Being the same as shown on a Survey by Hood L. Richardson, P.A., dated July 26, 2004, a copy of which is recorded in Plat Cabinet G, Slide 39-6, Beaufort County Registry, and reference is made thereto for more complete and accurate description.

This being the same property conveyed to Belhaven Ventures, LLC by deed dated August 5, 2004 and recorded in Book 1409 at page 951 of the Beaufort County Registry, and being the same tract or parcel of land conveyed to Pungo District Hospital Corporation by deed dated September 21, 2010 of record in Book 1730, page 869, Beaufort County Registry.

The above described tract or parcel of land bears Beaufort County GPIN No. 7605-69-8226.

BK1850 PG093

Tract Eight

BEING Lot 436 and Lot 437 as the same are shown on a plat entitled "Property of Pungo District Hospital" dated November 15, 1996 by Jarvis Associates, P.A., a copy of which is recorded in Plat Cabinet F, Slide 7-8, Beaufort County Registry and incorporated herein by reference for a more complete and adequate description.

Label Jumrell Sugg Carmichael etel PC

## Exhibit A to Supplemental Complaint.

*After our Title VI Complaint was filed in January 2014, the parties were invited by the Community Relations Service of the U.S. Department of Justice to participate in Mediation. After several discussions, the Parties signed this Historic Agreement on 3 April 2014.*

### THE MEDIATION AGREEMENT BETWEEN
### VIDANT HEALTH
### AND
### NC NAACP with the TOWN of BELHAVEN, NC



This Memorandum of Agreement (Agreement) is consistent with the United States Department of Justice, Community Relations Service (CRS) congressional mandate as detailed in the Civil Rights Act of 1964 (42 U.S.C. §2000g). CRS provides assistance to communities and persons therein in resolving disputes, disagreements or difficulties related to conflicts and tensions based on race, color, and national origin. CRS also works with these parties to help communities prevent and respond more effectively to violent hate crimes committed on the basis of actual or perceived race, color, national origin, gender, gender identity, sexual orientation, religion, or disability.

This Agreement is the result of several earnest meetings between the senior leadership from Vidant Health with its legal representation, leadership from the North Carolina State Conference of the NAACP with its legal representation representing Hyde County and Beaufort County Branches, and the Mayor of Belhaven.

The expressed intent of the parties to this Agreement is to establish a process whereby the parties demonstrate their capacity to work together as recognized leaders to help insure the citizens of Hyde and Beaufort Counties maintain access to quality healthcare. All parties have voluntarily agreed to participate in this Agreement.

In essence, this agreement is an example of how public-private partnerships have the potential to make a significant impact on people's lives. The signing of this agreement empowers Beaufort and Hyde County residents and the Belhaven community to maintain as they have determined

PLAINTIFFS' EXHIBIT "B"

appropriate, through a collaborative community development model and local engagement, continued access to hospital services, particularly hospital emergency services.

In a spirit of mutual cooperation, the Parties agree to work collaboratively to address the healthcare concerns of citizens in Hyde and Beaufort Counties. In doing so, the parties agree to a process created to transform the relationship dynamic from adversarial to a relationship of openness and trust.

## Points of Agreement

### Vidant Health

1. Vidant will transfer ownership of the intangible operating rights and the tangible operating assets necessary for the continued operation of the Vidant Pungo Hospital, f/k/a Pungo District Hospital (the "Hospital"), to a newly created legal entity, more particularly described herein (hereafter the "Pungo District Hospital Community Board, Inc.") which will become the licensed and certified operator of the hospital on or before July 1, 2014. The actual terms of transfer, including the specific assets to be transferred, will be set forth in a more definitive agreement mutually agreed to by the parties.

2. Vidant will continue to operate the Hospital at its present level, including the Emergency Room, for 90 days, at least through July 1, 2014 to permit a smooth transition of operations. During this ninety day period, Vidant will make the Vidant Pungo Hospital financials available for review and analysis to the representatives of the NC NAACP, the Mayor of Belhaven or their designated consultants for a twenty (20) day period to commence upon a date agreed upon by all parties.

3. Vidant will identify a hospital "change of ownership" expert to the Mayor of Belhaven and the NC NAACP expert to assist them through the transfer process if needed.

4. Vidant will assist the newly created Pungo District Hospital Community Board, Inc., with the search for a hospital management company, if requested, and if the Pungo District Hospital Community Board, Inc., determines that a management company is needed, to assist with the operation of the hospital. Vidant will cover the costs of reasonable management fees up to ninety (90) days, following the July 1, 2014 transfer.

5. Vidant will make available $1,000,000 above and beyond the assets and liabilities it will transfer on July 1, 2014, which along with Beaufort County's offer of an additional $2,000,000, will provide some of the needed working capital for the community-owned Hospital.

6. Vidant will deed the hospital property, including improvements, to the Pantego Creek, LLC ("LLC"). Contingent on the Pungo District Hospital Community Board, Inc. and the LLC negotiating a mutually acceptable lease, the hospital property and building will be leased to the new Pungo District Hospital Community Board, Inc. at a nominal rental rate.

7. Vidant will maintain the existing primary care practice in Belhaven at least through the initial term or the current renewal term of the existing physicians' employment agreements and contracts.

8. In the event that the Pungo District Hospital Community Board, Inc., is unable to assume operational responsibility for the hospital for whatever reason on July 1, 2014, the Hospital will be closed, but Vidant will work with state and federal governmental agencies to preserve the hospital's existing intangible operating rights (e.g, state licensure, certificate of need, Medicare/Medicaid certification, CAH status) so that Pungo District Hospital Community Board, Inc. is able to reopen it.

9. In the event the Hospital closes on July 1, 2014, Vidant will extend the operating hours of the existing primary care practice in Belhaven to a 24/7 schedule to provide urgent care services.

## NC NAACP and the Town of Belhaven

1. The NC NAACP agrees to stay the pending Title VI Complaint with the Office of Civil Rights of the U.S. Department of Health and Human Services at present, but reserves its right to re-file should issues related to disparate impact arise through July 1, 2014.

2. Belhaven Mayor Adam O'Neal will immediately begin informing the Hospital service community including the three doctors at the Hospital, the Beaufort and Hyde County Commissioners, the Pantego Creek LLC, and other stakeholders interested in maintaining and strengthening the Hospital of the terms and opportunities of this agreement.

3. The Town of Belhaven and Mayor O'Neal will form a new representative Community Board to complete the development of a viable business plan and a new legal entity (hereafter the "Pungo District Hospital Community Board, Inc.") to implement the plan and to prepare for the July 1, 2014, transfer of hospital operations, including hospital equipment, and other tangible assets necessary for its operation, from Vidant on that date.

4. The representative Community Board (noted above) will strive to insure the newly created hospital management plan and its implementation at the Belhaven based Pungo District Hospital becomes a model for a community-owned and operated rural hospital in eastern North Carolina and the nation that will insure medical care to all.

5. The new Pungo District Hospital Community Board will keep all primary parties to this agreement informed about its progress and will participate in scheduled check-in session(s) on or about May 1, 2014.

6. The NC NAACP, the Town Council of Belhaven, and Vidant will participate in a Community Service in Belhaven on the evening of April 3, 2014, at which time the respective leaders of the all parties will report to the public about these terms.

## Voluntary Agreement and Ethics Disclaimer

This Agreement is the result of voluntary mediation between the parties and is not a result of duress, coercion, or undue influence. Nothing in this Agreement should be taken as an admission of wrongdoing by any party and the terms and conditions contained herein are non-contractual and create no independent contractual obligation and/or duties upon any of the parties hereto. It being distinctly understood and agreed that no party to this Agreement shall institute or prosecute any judicial or administrative proceedings of any kind or nature to enforce any of the terms and conditions herein.

**Terms of Agreement**

Upon the fulfillment of the aforementioned provisions, this Agreement shall expire. It is understood that the parties of this Agreement agree to work in earnest and convene themselves as needed during the term of the Agreement to uphold its tenets as described herein.

**Dispute Resolution**

In the event that the parties to this Agreement cannot reach agreement on issues before it, neutral dispute resolution will be sought to resolve their differences. The U.S. Department of Justice, Community Relations Service or other local dispute resolution service might be sought in this regard.

**Party and Third Party Rights**

Nothing in this Agreement is intended to create or shall anything in it be construed as creating any rights in any third party entity or person that would not exist independently of this Agreement.

**Consummation and Ratification**

IN WITNESS WHEREOF, the parties have executed and delivered this Agreement as of this 3rd day of April 2014 and the signatories hereto personally represent that this Agreement is executed pursuant to legal authorization by the organizations on behalf of which they are signing

**Party #1: NC NAACP**
By:
William Booth (Pres. Beaufort NAACP)
Michael Adams (Pres. Hyde NAACP)
William J. Barber, II (Pres. NC NAACP)

**Party #2: Town of Belhaven**
By:
Adam W. O'Neal (Mayor)
Robert Stanley (Council Member)
Samuel A. Walker (Council Member)
Greg Satterthwaite (Council Member)
Julian Goff, (Council Member)

**Party #3: Vidant Health**
By: David C. Herman, MD (CEO, Vidant Health)

Witnessed By:
Suzanne V. Buchanan
Conciliator, U.S. Department of Justice
Community Relations Service

*The NAACP is the nation's oldest and largest civil rights organization and has operated for 105 years with one purpose: to eliminate racial discrimination from our society*

**Title VI Supplemental Allegations by NC State Conference of NAACP, its Hyde and Beaufort County NAACP Branches v. Vidant Health Systems, Inc. #14-173780,**

**Filed June 23, 2014, with Regional Manager Tim Noonan, Office of Civil Rights, US Dept. of HHS, Atlanta, GA. Fax 404-562-788 and with the US Dept. of Justice Title VI Enforcement Division**

**Note:** *These Supplemental allegations are filed by the same complainants who filed our original complaint #14-173780 in early January, 2014. The sections of that complaint that described the complainants, the context, and the allegations remain the same. They are incorporated herein, but for your convenience, we include an edited version of the racialized context of the great harm Vidant's actions are about to cause to the African American, Latino, and poor people of the Pungo District Hospital ("PDH") service area.*

<u>**The Region**</u>

**1. Hyde and Beaufort** counties stretch from Ocracoke Island in the Atlantic Ocean on the Outer Banks of North Carolina to the county seat of Beaufort, [little] Washington on the western edge of the County. For almost a half a century, the Hospital and emergency facilities that served the eastern half of Beaufort and all of Hyde County was in Belhaven. It is named after



the Pungo River that divides Hyde and Beaufort County. The hardy inhabitants of these two long-connected counties got excellent medical care from the dedicated doctors (no doctor practices in Hyde County) at the emergency room in the Pungo Hospital in Belhaven.

PLAINTIFFS' EXHIBIT C
Case 4:14-cv-00151-D   Document 1-1   Filed 08/19/14   Page 19 of 27

2. The children and other members of the thousands of working poor families in the two counties--particularly African Americans and other people of color--can trace their families back to the slave system. David Cecelski, a North Carolina historian who was brought up in this area, has written about the history of the African American people here in *The Waterman's Song: Slavery and Freedom in Maritime North Carolina* and *Along Freedom Road*. His descriptions of the strength and character of the people in the PDH service area are incorporated into this complaint, providing federal investigators with powerful insights about the people whom NAACP Presidents Barber, Adams and Booth represent in this Title VI Complaint. Hyde County has about 6,000 people, 35% Black and 2-3% Latino. Beaufort's 47,500 population is about 27% Black and 7% Latino. Substantial percentages of the African Americans in the two counties are poor and qualify (or would have qualified, if it had been accepted by the State government) for Medicaid health insurance.

### September 2011

In 2011 Vidant Health Systems, Inc., operating under the name *University Health Systems, Inc.* ("Vidant"), began negotiating with Beaufort and Hyde County Health Departments and other county officials and medical providers who had birthed and nurtured the PDH since it was built with U.S. Hill-Burton funds after WWII to provide non-discriminatory health care in rural areas.[1] Vidant had created a virtual monopoly of institutional health care in the last eight years, having bought up eight other community hospitals, several physician practices, home health businesses, hospices, wellness centers and other health care services in the 29 counties of eastern North Carolina. Vidant advertises it serves 1.4 million people in these counties. On 30 September 2011 Vidant signed an Agreement with the Local County Board that operated the PDH, promising Vidant would "maintain and improve" the PDH and its emergency room.

1

**Pungo District Hospital, Belhaven NC as of December, 2013**



PLAINTIFFS' EXHIBIT C

The emergency room at PDH had served and saved thousands of poor people, elderly people with strokes and heart attacks, women with high-risk pregnancies, and victims of storms, the ocean, and car crashes. The 9/11 Agreement (Exhibit to our January Complaint) provided that indigent minorities and other people previously served by the PDH would have their statutory emergency room rights honored.

### September 2013

Less than two years after it made these promises, Vidant announced it was closing PDH. Not only was it going to close it, it was going to pay over $800,000 to tear down one of the most beautiful hospitals in the country! Vidant announced it would maintain a clinic in Belhaven, with no Emergency Room and several other in-patient services provided at the PDH. In our January Complaint #14-173780, incorporated herein, we alleged Vidant knew (and therefore intent is implied) that:

(a) The closure of the PDH ER would cause unnecessary deaths of poor infants and older people of color;

(b) That its unspoken, but very real, economic objective was to rid itself of what it believed were the less profitable aspects of the PDH (such as the ER) and replace these aspects with the highly profitable services for middle and high-income [predominantly white] people;

(c) That PDH service area is tens of thousands of patients per year from Beaufort and Hyde County, a poor, underserved population that needs timely access to health services and that many poor people are aware of the federal Emergency Medical Treatment and Active Labor Act (EMTALA) which requires all hospitals with emergency facilities to screen and stabilize all presenting patients, regardless of their ability to pay;

(d) That EMTALA does not apply to outpatient facilities or "urgent care centers" and that with cases where it is unclear whether an emergency medical situation is present, these "centers" or "clinics" can reject patients who are not able to pay;

(e) That if it violated the EMTALA it could lose Medicare payments;

(f) That by closing the ER at the PDH, its former patients who live east of Belhaven all the way out on Ocracoke Island who may suffer from gunshot wounds, heart attacks, strokes, difficult pregnancy labor, or auto crashes, would have to travel 45 minutes more to the Vidant-owned hospital in Washington, NC.

In short, Vidant knew when it made this decision that in cases of a mass tragedy, the extra travel time will cause deaths. It knew that in cases of natural emergencies such as hurricanes and floods, it will cause additional deaths. One in five people in Beaufort live in poverty; one in four in Hyde County live in poverty. Over 33% of Black people in Beaufort live in poverty; more than 60% of Black people in Hyde live in poverty. Vidant's closure of the Emergency Room shall have a disparate effect on Black and Latino people and Vidant knew this when it made this decision.

### Supplemental Allegations

The above allegations have not been denied by Vidant. Vidant has thus far avoided the HHS investigation into the validity of these allegations that was about to get underway, by

accepting the U.S.DOJ's Community Relations Service invitation to participate in mediation in mid March., and after many days of negotiations signed a historic Agreement to turn the PDH over on July 1, 2014 to a revived community-based non-profit Board to save the beautiful hospital, and to turn it into a Model Rural Hospital for the Nation. (Exhibit A, the Agreement signed on April 3, 2014, between Vidant, the NAACP, and the Belhaven Town Council)

## April 4- June 2, 2014: Exciting progress toward implementing the Historic Agreement

Between April 4 and June 2, 2014, progress was made toward making the transfer of the PDH to the new Community Board to establish the Model Rural Hospital contemplated by the parties in the Agreement they had signed. In these 60 days, with all volunteer workers, the Town Council of Belhaven:

* retained an experienced hospital transfer attorney who established a good working relationship with the Vidant attorney who had been an active participant in the Mediation.

*retained a team of hospital business planners, professors at Campbell and UNC-CH, who helped analyze the financial documents that Vidant was turned over to us in late May;

* the transfer Team and the NAACP, with its extensive contacts, met with rural hospital experts and funding agencies to determine how to shore up the capital base for the new Model Rural Hospital, insuring its financial and strategic viability in the rapidly changing health care business, taking full advantage of the latest thinking in health management, wellness enhancement, and cost-reduction incentives, while providing high-quality hospital care for emergencies, and other difficult health problems that require ultra-sound, mammography, and other equipment on-site at the PDH.

At the check-up meeting required in the Agreement on 2 June 2014, the deputy director of Vidant and our transfer team established direct relations and agreed to work together for the month remaining before the transfer would take place. Vidant and Town lawyers obviously had mutual respect for each other. They had agreed on a creative way of helping the new Board meet the July 1st deadline. We left with both sides promising to make every effort to meet the deadline, so that not a day would go by when Emergency Care was not available to the minority populations depending on the PDH Hospital. For the next couple of weeks, our transition team met with Vidant administrators, and began developing a final transfer plan.

## The Pantego Creek LLC Glitch

However, on June 16th, less than two weeks before the July 1st transfer date, the lawyer for the PC LLC sent a letter to the Attorney for the Town of Belhaven and for the NC NAACP saying, in essence, that Vidant had overstated its ability to deliver the property to the new Community Board on 1 July 2014, and that the PC LLC would not participate.

PC LLC is a legal entity that was created with Vidant's help, and the two entities had signed a Transfer Agreement on 17 March 2014, two months after the NAACP had filed the underlying Title VI Complaint against Vidant. The PC LLC attorney told the Town of Belhaven lawyer that PC LLC, intended to enforce its 17 March 2014 transfer agreement with Vidant. Consequently, the PC LLC attorney said, his clients would not be cooperating with the plan to

transfer control of the PDH from Vidant to the new Board. The Vidant attorney said she was surprised by this development.

Whatever transpired between Vidant and PC LLC, it became obvious that Vidant would not be able to carry out the promise in Paragraph 6 of the Agreement. Vidant had been confident at the Mediation that PC LLC was not a necessary Party to the Agreement, asserting it would be no problem to leasing the "hospital property and building" to the new Pungo District Hospital Community Board, Inc." at a nominal rental rate." Vidant had indicated to the new Board's transition team that it had reviewed the simplified method of effectuating this agreement with the PC LLC, which did not object to this approach. In fact counsel for PC LLC, Vidant, and the Town discussed these issues via conference call and PCLLC's attorney, aware of the efforts being made to implement the transition by 1 July 2014 indicated he did not believe the LLC would impede the implementation of the transfer.

His representations were apparently wishful thinking, since he wrote the opposite in the 16 June 2014 letter. He said then that the PC LLC would not cooperate in the transfer of the PDH to the new Community Board on 1 July 2014. For the transfer of the PDH to take place and to maintain the provision of Emergency and other presently provided services to the minority population living in its service area --the critical issue in this complaint-- these outstanding legal issues regarding the relationship between Vidant and PC LLC need immediate clarification by the U.S. Department of Justice.

a. As of the date of this filing, neither Vidant or PC LLC have filed any documents regarding the alleged transfer of the property from Vidant to Pantego Creek, although the contract between the two parties was signed on 17 March 2014, two months after we filed this Title VI, and a few days after the DOJ Mediator began arranging our first meetings to try to resolve the issues raised by our complaint.

b. The unfiled 17 March 2014 Agreement between Vidant and the PC LLC required Vidant to deliver to the PC LLC a non-warranty deed, and bills of sale, assignments, and other papers. In return, the PC LLC promised it will deliver to Vidant assumptions and other instruments to complete the transfer. PC LLC was also required to deliver to the old community board a Memorandum of Termination of Option to Purchase and Right of First Refusal in recordable form, terminating the Original Memorandum now recorded in Beaufort County Board of Registrar on 5 October 2011, Book 1764, page 20.

c. Other issues that remain, in light of the unexpected position taken by the PC LLC in its letter of 16 June 2014, are the failure of PC LLC to meet the tax-related non-profit status by 28 September 2012, a condition precedent of Vidant in the 2011 Agreement with PC LLC, but apparently waived in the unfiled Transfer Agreement of 17 March 2014.

d. Vidant sent a letter to PC LLC on 4 April 2014, the day after we executed the historic Mediation Agreement. (Ex. A) Vidant requested changes to the unregistered Transfer Agreement signed two weeks earlier with PC LLC, offering "back-office" support services to assist PC LLC with such issues as (1) lease discussions with the new Community Board; conducting a Building Interior Environmental Assessment of the PDH facilities; and (2)

amending the Transfer Agreement to include this Assessment and to cover the costs. It is not known whether PC LLC, responded to this letter.

## Present Situation and Possible Remedies

All parties were apparently surprised by the PC LLC's last-minute glitch. Although there have been some differences between the parties as we negotiated the practical terms of the Historic Agreement, in the past two or three weeks real progress had been made. The NC NAACP had meetings with major health providers and funders with the new PDH Board's transfer team. Those who have read the historic Agreement, and seen that Vidant, the NAACP, and the Belhaven Town Council are all committed "to insure the newly created hospital management plan and its implementation at the Belhaven based Pungo District Hospital becomes a model for a community-owned and operated rural hospital in eastern North Carolina and the nation that will insure medical care to all" believe the Model Hospital will become a reality soon. *Agreement, Section NC NAACP and the Town of Belhaven,* Par. 4.

But because of the present position of the PC LLC, Vidant will close the Emergency Room on 1 July 2014, and is committed to pay the PC LLC over $800,000 to tear down the building soon. These actions will cause irreparable harm to the property that Vidant promised to transfer to the newBoard, and to the infants[2] and other human beings whose lives would have been saved by the ER and other hospital services now only available until 1 July 2014.

These actions, which are self-executing on 1 July 2014, necessitate emergency and immediate action by the U.S. Department of Justice, pursuant to its oversight jurisdiction and responsibility to insure the purpose and the process of Title VI of the Civil Rights Act are taken seriously by all parties.

## Immediate Remedies

Because the parties have established a working relationship with the DOJ Community Relations Service Conciliator and because we have all agreed that when disputes arise in the effectuating of the Agreement the parties will use dispute resolution, including the CRS Conciliator, we request these immediate steps to prevent the racially disparate and adverse impact to the people of color of Hyde and Beaufort County that will be caused by Vidant's closure of the Hospital on July 1, 2014:

1. The DOJ and its U.S. Attorney for the Eastern District of North Carolina should seek a federal injunction against Vidant's closing the Hospital on July 1, 2014, if there has not been a resolution of the last-minute problem caused by the PC LLC and other problems defined in our check-up meeting of June 2, 2014, on the grounds that this arbitrary closing, when doctors and

---

[2]Vidant's act of closing the Emergency Room on July 1, 2014, if the new Board we have created is unable to negotiate a lease with the LLC to allow the new Board to take over the Hospital, will directly cause premature and ill-nourished infants to die. The 2012 data on infant deaths in North Carolina showed a disproportionate 7.8% increase in the death rate of African-American babies, twice as high as that for white babies. The decision to close the one free medical facility that poor mothers know they will not be turned away from for lack of insurance, has a racialized impact.

technical staff are available to staff the ER, will cause irreparable harm and have a disparate impact on the people of color's health in the Hospital's service area;

2. A Mediation session be convened immediately, to take up the PC LLC's apparent refusal to negotiate a lease with the new Board, with efforts made by all those interested in maintaining and developing the Hospital as a Model Rural Hospital for the nation.
3. The Mediator should request an updated list of the disagreements reported at the check-up session, including whether Vidant will transfer its accounts receivables, its cash on hand, all the hospital equipment and other supplies, as it promised it would in the Agreement.

Respectfully filed, this the 24th Day of June 2014.


_____/s/_____
Rev. Dr. William J. Barber II, President
North Carolina State Conference of NAACP Branches


_____/s/_____
Alan McSurely,  NC State Bar # 15540
McSurely & Turner, PLLC
Attorney for NC NAACP and Hyde and Beaufort Counties

NORTH CAROLINA
COUNTY OF BEAUFORT

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
14 CVS _697_

| | |
|---|---|
| TOWN OF BELHAVEN, NC; and THE | ) |
| NORTH CAROLINA NAACP STATE | ) |
| CONFERENCE OF BRANCHES, THE | ) |
| HYDE COUNTY NAACP BRANCH, and | ) |
| THE BEAUFORT COUNTY NAACP | ) |
| BRANCH, | ) |
|      Plaintiffs | ) |
|      v. | ) |
| | ) |
| PANTEGO CREEK, LLC; and | ) |
| VIDANT HEALTH, INC, | ) |
|      Defendants. | ) |

**TEMPORARY**

**RESTRAINING ORDER**

THIS MATTER, coming on to be heard by the undersigned upon ex parte Motion for a Temporary Restraining Order by Plaintiffs against Defendants, and the Court, finding that the Plaintiff has filed a Verified Complaint requesting a Temporary Restraining Order and Permanent Injunctive Relief, hereby finds: (i) that Plaintiff has established probable cause that it will be able to prove the rights which it asserts, and has shown that it is likely to prevail on the merits of its case; (ii) that the Plaintiff will suffer immediate and irreparable damage if equipment is removed from the Property and the air-conditioning and de-humidifiers are turned off; (iii) that this Order will preserve the *status quo* pending a hearing on a Preliminary Injunction; (iv) that in balancing the likelihood of irreparable harm to Plaintiff against the likelihood of harm to Defendants, there is a decided unbalance of hardship in Plaintiffs' favor, such that Plaintiff is entitled to a Temporary Restraining Order, barring the Defendants from removing equipment and discontinuing the air-conditioning and de-humidifiers at the Property and otherwise causing the condition of the Hospital buildings to deteriorate.

NOW, THEREFORE, the Defendants, their agents and employees, are hereby enjoined and restrained from removing equipment and discontinuing the air-conditioning and de-humidifiers at the Property, and are further enjoined for any other actions which would cause the condition of the Hospital buildings to further deteriorate.

Pursuant to Rule 65(c) of the North Carolina Rules of Civil Procedure, the Plaintiff shall post security in the amount of $ _15,000.00_ , for the payment of such costs and damages as may be incurred or suffered by any party who is found to be wrongfully restrained.

This Temporary Restraining Order expires ~~fifteen (15)~~ Ten (10) days after its entry, unless extended by the Court for a like period or the parties consent to its continuance.

A Preliminary Injunction Hearing shall be held on the Twenty-fifth ( 25th) day of August, 2014, at _10_ o'clock A.M. At the Washington Court of House at Plymouth, NC or as soon thereafter. The Pungo District Hospital Community Board will be added to this Action as a party plaintiff and subject to this order. This Temporary Restraining Order was issued this 14th day of August, 2014 at _4:14_ o'clock P.M.

_____  8-14-14
SUPERIOR COURT JUDGE PRESIDING

TO; Attorneys for All Parties

    Alan McSurely, NC NAACP, Hyde and Beaufort NAACP Branches
    John B. Tate III, Town of Belhaven, N.C.
    Mary Beth Johnson, Vidant Health, Inc.
    Arey W. Grady III, Pantego Creek, LLC