IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
FILE NO. 4:14 CV 151-D

| | |
|---|---|
| TOWN OF BELHAVEN, NC; and ) <br> THE NORTH CAROLINA NAACP ) <br> STATE CONFERENCE OF BRANCHES, ) <br> THE HYDE COUNTY NAACP BRANCH, ) <br> and THE BEAUFORT COUNTY NAACP ) <br> BRANCH, ) <br>     ) <br>     vs.     ) <br>     ) <br> PANTEGO CREEK, LLC and ) <br> VIDANT HEALTH, INC., ) <br>     Defendants.     ) | **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS IN LIEU OF ANSWER** |

NOW COMES Defendant Pantego Creek, LLC ("Pantego"), by and through the undersigned counsel and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and hereby respectfully submits this memorandum in support of its Motion to Dismiss, filed contemporaneously herewith, in lieu of an answer.

STATEMENT OF THE CASE

This case was instituted by the filing of a Complaint and Motion for Temporary Restraining Order on August 14, 2014, in the Superior Court of Beaufort County, North Carolina. In their Complaint, Plaintiffs allege a civil rights violations against both Defendants and a state tort claim for unfair and deceptive trade practices against Defendant Vidant Health, Inc. ("Vidant"). Plaintiffs requested a temporary restraining order ("TRO") and permanent injunction against Defendants. The same day, a hearing on Plaintiffs' TRO request was held and a TRO was granted for ten days.

On August 19, 2014, Pantego removed this case to Federal Court [DE 1] based upon the existence of a federal cause of action. On September 2, 2014, Vidant filed a Motion for

Declaratory Relief, or, in the alternative, Motion to Dissolve Temporary Restraining Order [DE 13]. Simultaneously herewith, Pantego has filed a Motion to Dismiss in lieu of an Answer, and this memorandum is submitted in support of that Motion.

## STATEMENT OF THE FACTS

Pungo District Hospital ("Hospital") began operating in the Town of Bellhaven in 1948.[1] In September of 2011, the Hospital entered into a change of control agreement ("Agreement") which effectively gave Vidant complete control over the Hospital. This Agreement also formed Pantego (Pantego Creek, LLC), which was responsible for addressing any issues associated with Vidant's assumption of control, including possible legal action against Vidant in the event of a breach of the Agreement. As part of the Agreement, Vidant obligated significant funding to the Hospital and agree to provide continuing healthcare to the Bellhaven community.

Additionally, the Agreement gave Pantego, in certain instances, and particularly in the case of a breach of the Agreement by Vidant, the right to purchase the Hospital's real property for a price equal to the value of improvements made by Vidant to that real estate. Thus, the LLC's primary remedy for any breach of the agreement by Vidant was the acquisition of the hospital campus. In September of 2013, Vidant announced that it planned to close the Hospital in 2014 and construct a multi-specialty, 24/7 urgent care center, including a helipad for air transport to larger regional trauma centers. Thereafter, Vidant and Pantego entered a further agreement which confirmed Vidant's obligation to deed the Hospital to Pantego, as envisioned under the Agreement.

In January of 2014, Plaintiffs filed a Title VI Complaint with the Office of Civil Rights,

---

[1] While the statement of the facts is derived largely from Plaintiffs' Complaint and attachments, to assist this Court's full understanding of Pantego's role in this matter, facts that supplement those in the Complaint and attachments have also been provided. These supplemental facts are not dispositive as to Pantego's Motion to Dismiss.

alleging that the closure of the Hospital disproportionately affected minority and impoverished citizens in the Bellhaven community. As a result of the Title VI Complaint, in April of 2014 Plaintiffs and Vidant engaged in a mediation wherein Vidant agreed to continue to operate the Hospital for an additional 90 days, in order to give Belhaven the chance to either assume operations of the Hospital or contract with an entity to do the same, by July 1, 2014. Although Pantego was not a party to the settlement and was not involved in the negotiations leading to the settlement, Pantego was willing to allow Vidant to keep the Hospital property indefinitely, as long as a hospital was operated on the property, provided that if the Hospital closed for any reason (whether by Vidant or a new organization identified by Bellhaven), the transfer of the Hospital property to Pantego would be implemented.

Bellhaven was unable to assume control of the Hospital by July 1, 2014. Thus, as agreed, Vidant deeded the Hospital property to Pantego on July 2, 2014. On August 14, 2014, Plaintiffs filed the present action and, following a hearing, a TRO was entered restraining Defendants from removing equipment from the Hospital, discontinuing the air conditioners and de-humidifiers at the Hospital, or any other action that would cause the Hospital to further deteriorate. As of the filing of this Motion, Defendants continue to incur costs associated with the TRO.[2]

## ARGUMENT

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. To survive a motion to dismiss a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Under Rule 12(b)(6), claims based on dispositive issues of law can be dismissed. *See Hishon v.*

---

[2] The issues regarding the TRO have been addressed by Vidant in their previously filed Motion for Relief [DE 14].

3

*King & Spalding*, 467 U.S. 69, 73 (1984). A 12(b)(6) motion can be granted as a matter of law if "it is clear that no relief could be granted under any set of facts that could prove consistent with the allegations." *Id*. A plaintiff need not plead detailed evidentiary facts, and a complaint is sufficient if it will give a defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *See Bolding v. Holshouser*, 575 F.2d 461, 464 (4th Cir. 1978). "Nonetheless, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege any facts [that] set forth a claim." *Estate of Williams-Moore v. Alliance One Receivables Mgmt., Inc.*, 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004).

### I. Plaintiffs have failed to state a claim against Pantego for which relief can be granted.

As an initial matter, Pantego does not concede that either Plaintiff has standing to raise any claims against Pantego. Pantego simply currently owns the property and building that once operated as the Hospital. Pantego has no legal authority to own or run a hospital or provide medical services in any manner. While Plaintiffs claim that they are entitled to the provision of medical services, as set forth below, Pantego is not the proper party to redress this issue. To the degree that Plaintiffs are entitled to the continued provision of medical services from an entity like Vidant, who is in the business of owning and operating medical facilities, Plaintiffs certainly have no right, constitutional or otherwise, to have the operation of those medical services occur on Pantego's property.

Plaintiffs sole claim against Pantego is captioned "Violation of Civil Rights." Although it is not explicit, Plaintiffs appear to assert a claim against Pantego alleging violations under Title

4
Case 4:14-cv-00151-D   Document 18   Filed 10/03/14   Page 4 of 9

VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*[3] This claim stems from the decision of Vidant to close the Hospital on July 1, 2014. As an initial matter, Plaintiff has failed to allege that Pantego either made the decision to close the Hospital or owned the Hospital at the time that decision was made. While Pantego now owns the property and building that was once the Hospital, which was conveyed after Vidant closed the Hospital, all of Plaintiffs' allegations stem from actions or inaction by Vidant. Plaintiffs allege that Vidant participated in a mediation and agreed to transfer its interest in the Hospital to Bellhaven. *Plaintiffs' Comp. ¶9.* Plaintiffs allege that Vidant failed to transfer the Hospital, and Vidant allowed the Hospital to deteriorate. *Plaintiffs' Comp. ¶¶10-12.* Plaintiffs allege that Vidant removed property from the Hospital. *Plaintiffs' Comp. ¶¶16-17.* Plaintiffs allege that Vidant conveyed the Hospital property to Pantego. *Plaintiffs' Comp. ¶8.* Plaintiffs allege that Vident offered to pay for demolition of the property, and that Vidant had a financial interest in closing the Hospital. *Plaintiffs' Comp. ¶¶20-21.* What Plaintiffs do not allege is that Pantego closed the Hospital or that they were harmed by Pantego. Plaintiffs allude to the fact that Pantego now owns the land and building that was once the Hospital, and might at some future date damage the property. However, the mere present ownership of property that once operated as a hospital does not give rise to any constitutional claim for relief.

Nevertheless, Plaintiffs' purported constitutional claims also fail on their merits. Title VI, like the Equal Protection Clause of the Fourteenth Amendment, condemns only conduct motivated by "a racially discriminatory purpose." *Washington v. Davis*, 426 U.S. 229, 240

---

[3] Causes of action for discrimination under Title VI, 42 U.S.C. §1981 or a state civil rights claim are appropriately analyzed under the same framework. *See Jane v. Bowman Gray Sch. of Med.-N.C. Baptist Hosp.*, 2002 U.S. Dist. LEXIS 19548 (M.D.N.C. June 2, 2002)

5

(1976). It is equally clear that Title VI prohibits only intentional discrimination, not "disparate impact" practices. *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001); *Peters v. Jenney,* 327 F.3d 307, 315 (4th Cir. 2003). As set forth above, Plaintiffs fail to allege that Pantego engaged in intentional discriminatory conduct. The Complaint is devoid of any factual assertion of intentional conduct or allegation that Pantego engaged in discriminatory conduct in its receipt of the Hospital property after the Hospital was closed by Vidant. Furthermore, Plaintiffs specifically assert their claims as disparate impact claims, which is no longer a private right of action under Title VI.[4] *See, Id.; Plaintiffs' Comp. ¶2* ("The abrupt closing of the Hospital by Defendants on 1 July 2014 has and will continue to disparately and directly impact and harm NAACP members…."); *Plaintiffs' Comp., Exh. C* ("Vidant's closure of the emergency room will have a disparate effect on Black and Latino people and Vidant knew this when it made this decision." Again, Plaintiffs' complaints result from acts of Vidant, and no allegation of intentional discrimination is made against Pantego.

Notwithstanding the lack of any allegation of intent, Plaintiffs also fail to satisfy the elements for establishing a cause of action pursuant to Title VI. To establish a Title VI cause of action against Pantego, Plaintiffs must allege that Pantego is engaging in racial or national origin discrimination and that Pantego is receiving federal financial aid. *See Sandoval*, 532 U.S. at 292; *Constantine v. Rectors & Visitors of George Mason Univ.,*411 F.3d 474, 501 (4th Cir. 2005). In the present case, Plaintiff has alleged neither. As set forth above and in Plaintiffs' Complaint,

---

[4] Prior to *Sandoval*, there was a dispute among the Circuits as to whether Title VI prohibits intentional discrimination or includes a prohibition against disparate impact discrimination. In 2001, the Supreme Court made clear that Title VI is limited only to intentional discrimination and that there is no private right of action to enforce Title VI disparate impact regulations; The Court clarified that only the funding agency issuing the disparate impact regulation has the authority to challenge a recipient's actions under this theory of discrimination.

Vidant, while operating the Hospital, was the party in receipt of federal funds triggering Title VI. Furthermore, Vidant was the party responsible for the closing of the Hospital, which it owned at the time it was closed, resulting in the alleged discrimination. Pantego's only involvement in the acts complained of in Plaintiffs' Complaint is the receipt of property, from Vidant, which has previously operated as the Hospital.

This is not a case where Pantego took control of a federally-funded program, or even had the authority to continue such a program. Nor is it a case where Pantego obtained the Hospital property with the intent to run a hospital or medical facility. Pantego came to own the Hospital property and building after the Hospital ceased operating under the direction and decision of Vidant. What Plaintiffs now seek is to force Pantego, a non-profit LLC who is not in the business and has no legal authority to operate a hospital or provide medical services, and who has no intention of operating a medical facility on the Hospital property, to maintain the Hospital property and building for an unlimited duration of time.

Plaintiffs confuse what appears to be their claim, that they are entitled to the continued provision of medical services, with what is actually their claim -- that they are entitled to the continued provision of medical services *at the specific Hospital location now owned by Pantego*. Title VI, even were it to apply, does not permit such a remedy. *See Bryan v. Koch,* 627 F.2d 612 (2d Cir. 1980) (suit filed against provider of medical services after notice of intent to close hospital was made and prior to the closing of the hospital); *NAACP v. Medical Ctr.*, 657 F.2d 1322 (3d Cir. 1981) (suit filed after a proposal of reduction of beds in medical facility was announced, but prior to the actual reduction); *Jackson v. Cleveland Clinic Foundation,* No. 1:11 CV 1334, 2011 U.S. Dist. LEXIS 101768, 2011 WL 4007732 (N.D. Ohio Sept. 9, 2011) (suit

filed against provider of medical services regarding continuation of medical services, prior to closing of facility); *Mussington v. St. Luke's-Roosevelt Hosp. Ctr.*, 824 F. Supp. 427 (S.D.N.Y.1993) (Court held that 3 years after a $300 million construction plan began on a new medical facility consolidating services at one facility, the plaintiffs were barred from any constitutional claim for equitable relief on the doctrine of laches.).

## **CONCLUSION**

For the above reasons, Pantego respectfully requests that Plaintiffs' claims against it be dismissed and its Motion to Dismiss be granted.

Respectfully submitted this 3rd day of October, 2014.

> By: /s/Scott C. Hart
> State Bar No. 19060
> /s/Anakah D. Harrison
> State Bar No. 35329
> Attorneys for Defendant
> Sumrell, Sugg, Carmichael, Hicks & Hart, P.A.
> Post Office Drawer 889
> New Bern, North Carolina 28563
> Telephone: (252) 633-3131
> E-mail: shart@nclawyers.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS IN LIEU OF ANSWER** was electronically filed with the Clerk of Court using the CM/ECF System, and that I have mailed a copy by First-Class Mail, postage prepaid, to the following non-CM/ECF participants, addressed as follows:

>John B. Tate III
>P.O. Box 700
>Chocowinity, NC 27817
>
>Alan McSurely
>109 N. Graham St., Suite 100
>Chapel Hill, NC 27516

I further certify that the Clerk of Court using the CM/ECF System, will send notice of such filing to the following registered CM/ECF users:

>Gary S. Qualls
>Susan Hackney
>Kathryn F. Taylor
>430 Davis Drive, Suite 400
>Morrisville, NC 27560

This the 3rd day of October, 2014.

>By: /s/Scott C. Hart
>State Bar No. 19060
>Attorneys for Defendant
>Sumrell, Sugg, Carmichael, Hicks & Hart, P.A.
>Post Office Drawer 889
>New Bern, North Carolina 28563
>Telephone: (252) 633-3131
>Fax: (252) 633-3507
>E-mail: shart@nclawyers.com

\\SERVER04\lssdocs\00000019\00054191.000.DOCX