1   STATE OF NORTH CAROLINA        IN THE GENERAL COURT OF JUSTICE
                                   SUPERIOR COURT DIVISION
2   COUNTY OF BEAUFORT             CASE NO.

3

4

5   _____

6   TOWN OF BELHAVEN, NC; and THE           )
    NORTH CAROLINA NAACP STATE              )
7   CONFERENCE OF BRANCHES, THE             )
    HYDE COUNTY NAACP BRANCH, and           )
8   THE BEAUFORT COUNTY NAACP BRANCH,       )
                                            )
9           Plaintiff,                      )   **TRANSCRIPT**
                                            )
10  vs.                                     )
                                            )
11  PANTEGO CREEK, LLC; and                 )
    VIDANT HEALTH, INC.,                    )
12                                          )
            Defendants.                     )
13  _____)

14

15

16  The above-captioned case coming on for hearing at the
    August 11, 2014 Session of the Superior Court of
17  Wilson County, Wilson, North Carolina, before the
    Honorable Milton F. Fitch, Jr., Judge presiding, the
18  following proceedings were had, to wit:

19

20

21

22

23

24  DATE REQUESTED:   8-14-14    DATE RECEIVED:   8-23-14

25

1                     A P P E A R A N C E S

2

3   For the Plaintiffs:        Alan McSurely, Esquire
                                109 N. Graham Street
4                              Suite 100
                                Chapel Hill, North Carolina  27516
5

                                John B. Tate, III, Esquire
6                              P.O. Box 700
                                685 NC Hwy 33 East, Unit A
7                              Chocowinity, North Carolina  27817

8   Also present:              Adam O'Neal, Mayor of Town of Belhaven

9   For the Defendant/        Arey W. Grady, III, Esquire
    Pantego Creek:            Sumrell, Sugg, et al.
10                              416 Pollock Street
                                P.O. Drawer 889
11                              New Bern, North Carolina  28563

12   For the Defendant/       Gary S. Qualls, Esquire &
    Vidant Health:            Mary Beth Johnston, Esquire
13                              K&L Gates, LLP
                                430 Davis Drive
14                              Suite 400
                                Morrisville, North Carolina  27560

15

16

17

18

19

20

21

22

23

24

25

(The following proceedings took place on Thursday, August 14,
2014 beginning at 10:40 a.m. with Plaintiffs' Counsel and
Defendants' Counsel present.)

           THE COURT:  We're here on a motion for a
temporary restraining order filed by the Town of Belhaven,
North Carolina, North Carolina NAACP State Conference of
Branches, Hyde County NAACP Branch and the Beaufort County
NAACP Branch against Pantego Creek, LLC and Vidant health.

           It appears to the Court that this is a situation
concerning a health care provider in Belhaven that purports to
cease and desist, opposed to, according to the allegation, to
turn certain equipment and facilities over to the Town of
Belhaven.  It's alleged that they did not do so nor did they
maintain the property up to July 1, 2014 and have continued to
let the hospital deteriorate until July 24, 2014 when the deed
was filed transferring the property to Pantego.  Since then
there's been several incidents that indicate that Vidant still
controls the property.

           They allege that there are federal statutes that are
possibly in violation of Title 6.  Purpose of the TRO is to
hold everything in place as it is at this point in time.  I'll
allow any further waste until the matter can be heard on a
permanent injunction ten days at least or more.  I'll be glad
to hear -- this is an action either filed or to be filed in the
county of Beaufort.  I am hearing the matter because I have

1  been assigned this six months in rotation to that judicial

2  district to which the Honorable Wayland Sermons is the Senior

3  Resident Judge who has indicated to this Court that he has a

4  possible conflict and asked if I had a problem with hearing the

5  matter.  My reminder of the law any Superior Court Judge in or

6  out of court session may hear a motion for TRO; therefore,

7  we're here.  All right.  Glad to hear the Plaintiff.

8          MR. McSURLEY:  Your Honor, I'm Alan

9  McSurely from Chapel Hill and this is John Tate who represents

10  Adam O'Neal who is the Mayor of Belhaven and the town council

11  in Belhaven.  We're partners in this endeavor to try to get a

12  status quo thing and I want to be very brief.

13          THE COURT:  I would like for you to be.

14  This is not a preliminary injunction.  This is a temporary

15  restraining order.

16          MR. McSURELY:  What we have here, and I

17  know Your Honor is sensitive to this situation, is that on one

18  hand we believe, both the NAACP that I represent and the Town

19  of Belhaven that my friend represents, is that we had a good

20  working relationship with Vidant and Mary Beth Johnston who's

21  sitting over here at this table, and we worked out this deal.

22  And then all of a sudden we hear about another entity that

23  instead of Vidant turning over the hospital to us, which they

24  promised to do on or about July 1st, they turned it over to the

25  LLC, Pantego Creek, LLC creating what we call a glitch in our

1    agreement.

2                         THE COURT:  An agreement that you had with

3    Vidant, is it in writing?

4                         MR. McSURELY:  Yes, it's in your packet

5    there, Your Honor.

6             And when we found that out we knew -- we had filed a

7    Title VI which you know about -- in January.  The federal

8    government asked us if we'd be willing to mediate.  The NAACP

9    said yes; the mayor said yes and Vidant said yes, and we worked

10   out a voluntary agreement which you know is the best kind.  And

11   then all of a sudden it just blew up in late June.

12            So I think of that line in Paul Newman's movie -- I

13   forget the movie but I think what we have here is a failure to

14   communicate.

15            But what we have now, Judge --

16                         THE COURT:  That was Cool Hand Luke.

17                         MR. McSURELY:  Cool Hand Luke, you're

18   right.  And what we have here is --

19                         THE COURT:  You're not alleging that you

20   are on the chain gang and you wanted to talk and here is the

21   man who you got a failure to communicate with when Newman

22   wanted to do something and he raised his hand and turned to the

23   boss as the movie said, he didn't quite understand what he

24   wanted, is that what you're alleging?

25                         MR. McSURELY:  Well, you can read whatever

1    you want to into my metaphor, Your Honor.

2          But be that as it may, what we have now we have a

3    mediator in Atlanta, works for the Department of Justice,

4    willing to fly up here at any time to get these parties back to

5    the table and finish this work.

6          On the other hand, we have Belhaven on the ground,

7    trucks coming by hauling stuff out of the building, fire

8    department chiefs that work for the mayor here saying that

9    Vidant, not Pantego Creek, but Vidant is pulling stuff out of

10   the building.  I have talked to the lawyer for Belhaven, for

11   Vidant, they say, oh, no, we're not going to demolish the

12   building; we don't even own the building.

13         So what we have is a difficult situation and we need

14   help.  That's what it comes down to.  And what we don't want,

15   while on one hand we would love to have mediation resume and

16   have people talk together and try to finish out what could be a

17   win/win situation for everybody in Belhaven and in that whole

18   region which you know well.  On the other hand, we have a

19   multi-million dollar corporation, Vidant out of Greenville, who

20   is daily has their cops out there, their security guards

21   kicking people off the property.  We have information that they

22   have contract with the LLC to pay them $800,000 to demolish the

23   building, to tear it down, things like that, that are all over

24   town.  Some of it -- I'll save this for the actual hearing that

25   we have on it.  But we believe that right now there is a direct

1   threat to this building that Mayor O'Neal and the town, the new

2   town community board that we've helped create, take over the

3   hospital which was per our agreement with Vidant has a direct

4   interest in this property.

5   If you'll look at the deed, I know, Judge Fitch,

6   you'd be interested, there's a deed attached in there that goes

7   back to 1948. Some families in Belhaven including Mayor

8   O'Neal's great granddaddy or maybe granddaddy, 1948, great

9   granddaddy, owned some of the land. If you'll remember, Harry

10  Truman came after the war, came back and passed this

11  Hill-Burton grant to build small rural hospitals all over the

12  country partly for the GI's coming back and partly to have the

13  first open desegregated hospitals in many parts of the country

14  particularly in the south. And this Belhaven hospital which

15  has always been called Pungo District Hospital was one of those

16  fully funded by the federal government with the land given by

17  citizens in the area for that hospital.

18  So all of that we would like to have a chance to

19  present to you over when we have our full hearing. But right

20  now what we want and we'd ask for is to keep the hospital not

21  from deteriorating anymore. You know that area, the humidity,

22  et cetera, it's right on the water. We have information that

23  they're going to turn the electricity off which would turn the

24  air conditioner humidifier off, which it's like, you know, if

25  your refrigerators goes off all the food gets rotten and that's

1  what's going to happen in this hospital.  So we have an

2  immediate need for you to do a status quo order to maintain the

3  status quo until we have a chance to look into this.

4        We would hope that in the ten days or whatever,

5  however many days you give till the full hearing, that we have

6  an opportunity to talk to our friends across the aisle here and

7  particularly with a very good mediator who already knows all

8  the players, it won't take her any time at all to get up to

9  speed and maybe we could come back and work this out without

10  your having to make a final ruling.

11        Be glad to answer any questions.

12                    THE COURT:  Now on July the 2nd --

13                    MR. McSURELY:  You're looking at the deed?

14                    THE COURT:  -- 2014 Pungo District Hospital

15  Corporation, the mailing address care of Vidant Health,

16  grantor, purports to convey the Pungo Creek, LLC, a North

17  Carolina Limited Liability Corporation.  And this was done, you

18  indicate, even though you had a written agreement from the

19  parties, that your group would be taking over and handling this

20  situation; is that correct?

21                    MR. McSURLEY:  On July 1st.

22                    THE COURT:  Well, the deed said it made it

23  effective July the 2nd.

24                    MR. McSURELY:  If you look at the top,

25  Judge, that deed sat around for three weeks and they filed it

1    on July 24th.

2                    THE COURT:  What says the Defendant, either

3    one or both or all three of you?

4                    MR. GRADY:   Good morning.  Arey Grady from

5    the Sumrell, Sugg firm in New Bern.  I represent Pantego Creek,

6    LLC.  Frankly, Your Honor, I don't have much to say this

7    morning.  We were presented this partially signed complaint

8    that I will note has not been filed to our knowledge with any

9    court this morning about an hour and a half ago.  It's next to

10   impossible to, you know, respond in such a manner.

11        For the record, I must respectfully make a couple of

12   objections, Your Honor.

13                    THE COURT:  Go right ahead.

14                    MR. GRADY:  Preserve some defenses that I

15   may have.

16                    THE COURT:  Go right ahead.

17                    MR. GRADY:  I would like to note that my

18   appearance today is very limited and specifically for the

19   purpose of objecting to the Court's jurisdiction over this

20   matter and, Your Honor, your authority to rule on this matter.

21   So don't put me in jail for saying that.

22                    THE COURT:  No, sir.  No, sir.  Listen,

23   whoa.  You can say whatever you'd like to say to me.  You are

24   an officer of this court and you understand that the most

25   important thing is the respectability of what you say.  I

1   understand you're an advocate for your side and that's why you

2   maintain to preserve the record.

3                       MR. GRADY:  Yes, sir.

4                       THE COURT:  You make your arguments.  I

5   make my rulings.  I note your exceptions and preserve them for

6   the record should there be.  Most, most TRO's, aren't even,

7   don't even have a transcript.

8                       MR. GRADY:  Yes, sir.

9                       THE COURT:  But I thought that it would be

10  wise if we would place it on the record should you ever have a

11  need to have to look at it.  Go right ahead.

12                      MR. GRADY:  I appreciate that and we

13  couldn't ask for more.

14          I would also like to preserve our right to remove

15  this matter to federal court.  It certainly raises substantial

16  legal issues under federal law.  Certainly we were not in a

17  position to do that before today's hearing having not received

18  a pleading of any type.

19          Your Honor, on the jurisdictional issues, if the

20  complaint has not been filed there's no case in the court

21  system.  There is nothing to adjudicate.

22                      THE COURT:  Has a summons been filed?

23                      MR. GRADY:  Not to our knowledge, Your

24  Honor.  So we contend there is no matter properly before any

25  court in this state as I stand here right now.

1          THE COURT:  What says the Plaintiffs as to

2     that?

3          MR. McSURELY:  Your Honor, Mr. Tate had to

4     leave before the courthouse opened this morning to get here at

5     9:00 and he's going to file it when he gets back in Washington.

6     He lives in Washington.

7          MR. GRADY:  Then this matter is premature,

8     Your Honor.  There's no case pending before the judicial system

9     of this state as we sit here this morning.

10          THE COURT:  All right.  All right.

11          MR. GRADY:  Furthermore, Your Honor --

12          THE COURT:  All right then, if that is your

13    objection, then I'll recess this hearing until 3:30 and I would

14    urge the parties to allow the status quo as it is at this point

15    in time to remain.

16          We stand adjourn until 3:30.

17          MR. GRADY:  Thank you, Your Honor.

18    (Proceedings adjourned at 11:03 to reconvene at 3:30 p.m.

19    At 3:30 p.m. the following proceedings took place.)

20          THE COURT:  All right.  Let us just say

21    that while we heard brief statements from the Plaintiff earlier

22    and then the Defendant started his statements and then the

23    Defendant raised the issue that the jurisdiction of the Court

24    of the matter wasn't in court, the Court in its discretion

25    allowed leave to go then file and based on judicial economy

1    just made sense that we just not, and in the interest of

2    justice, just made sense that we would go and handle the

3    matters since all parties were here, parties appeared to be

4    ready and while technically that was the issue, the Court knows

5    that that was the issue, rather than for it to be filed after

6    the fact, we just postponed it and now it's done.  I imagine

7    that the Defendant still has objection to the Court even

8    hearing the matter even now and I'll note their exception and

9    preserve it for the record.

10            All right.  Now do you want to finish where we were?

11            MR. GRADY:  Yes, sir, Your Honor.  And I

12   was just about finished but I will reiterate, we do reiterate

13   our objections to the jurisdiction as you just noted.  And we

14   do reserve our right to remove this to federal court.  Again,

15   this is a limited appearance on my behalf.

16            Your Honor, I will end by suggesting that if you're

17   inclined to grant any part of the Plaintiff's motion today and

18   have a return with a fuller evidentiary hearing later this

19   month or into September, I would strongly urge Your Honor to

20   include in the order that -- and let me get the name right --

21   pardon me -- that the Pungo District Hospital Community Board,

22   Inc. be joined as a party.  And, Your Honor, I ask for that for

23   two reasons.  As you just noted in the interest of judicial

24   economy, efficiency in having all the parties before the Court

25   that may be necessary for a full resolution of the facts.

1          When you look at the agreement that the Plaintiffs

2     have tendered, many of the benefits flow to that entity and

3     from my client's perspective, the only time that we were

4     mentioned in this agreement is paragraph 6.  It says, (as

5     read):  "Vidant will deed the property to Pantego Creek, LLC

6     contingent on the Pungo District Hospital Community Board, Inc.

7     and the LLC negotiating a mutually accepted lease, the hospital

8     property", et cetera, so forth.

9          So to the extent that we're in this case, we think

10    the only conceivable party that we have a contractual

11    obligation to should be in the case also.

12          Again, getting ahead of myself a little bit but,

13    again, if you grant some relief today we would like to have

14    that party back before the Court when we return on the fuller

15    hearing when the judge might order it.  Thank you, Your Honor.

16                    THE COURT:  Yes, sir.

17                    MR. QUALLS:  Thank you, Your Honor.

18          Gary Qualls on behalf of Defendant Vidant, Your

19    Honor, and we would also just not make a general appearance but

20    a special appearance as well.

21          I did want to note for the record that we received

22    the notice of this hearing by e-mail at 5:48 p.m. last night.

23    I wanted to make a note of that.

24          Your Honor, I do want to be brief but I want to cover

25    some of the allegations that were in the complaint as well as

1   in Mr. McSurley's presentation.  First of all, Vidant denies

2   all of the allegations in the complaint and those made today

3   orally.

4              I can talk as much or as little as you would like --

5                    THE COURT:  As little as likely.

6                    MR. QUALLS:  Thank you.

7              But I can answer any questions about Vidant's efforts

8   to the thorough decisions that led to Vidant's decision to

9   close the old hospital and offer to open a new replacement

10   facility that Vidant was willing to pay 2.4 million dollars to

11   build.

12              And so that tells a little bit of the big picture.

13   I'll be happy to answer any questions on that.

14              If I could approach, Your Honor, and hand up one

15   thing that Mr. McSurley referred to -- may I approach, Your

16   Honor?

17                    THE COURT:  You may.

18          (Mr. Qualls tendered documents to the Court.)

19                    MR. QUALLS:  I do want to hand up the

20   mediation agreement.  That was referred to -- let me get extra

21   copies of that.  Your Honor, I thought I had extra copies.

22   That is what -- if I gave you the right thing.

23                    THE COURT:  Let me give it back to you

24   because I have it as Exhibit A supplement in the, should be

25   Exhibit B.

1          MR. QUALLS:  Yes, that's what I was going

2     to mention is it's slightly differently paginated and I just

3     wanted to make sure that you had the entire document.

4          If you look over, Your Honor, on the second page of

5     Exhibit B, Mr. McSurely had indicated that they were somehow

6     caught by surprise by Vidant in the mediation that he referred

7     to and what I want to point out to you is if you look at

8     paragraph 6 on page 2 of the mediation agreement, it's clear in

9     that paragraph that Vidant would deed the hospital property

10    including improvements to Pantego Creek, Mr. Grady's client.

11    And then it says, (as read):  "Contingent on the Pungo District

12    Hospital Community Board and the LLC negotiating a mutually

13    acceptable lease, the hospital property and building will be

14    leased to the new Pungo District Hospital Community Board at a

15    nominal rate."

16         So it was clear in that mediation and coming out of

17    that mediation that Vidant was going to convey, pursuant to a

18    prior agreement, the property upon which the old hospital was

19    situated as well as the building to Pantego Creek.  So to the

20    extent that Plaintiffs suggest that Vidant somehow pulled a

21    fast one on them and didn't apprise them that we were going to

22    sell the property to Pantego Creek, that is clearly untrue

23    because it was contemplated in the mediation agreement.

24         Now, there is, we would say that there is nothing to

25    enjoin Vidant against here.  Even if you were to enter a TRO,

1  which we don't believe you should, but there's nothing to

2  enjoin Vidant on because Vidant doesn't own the real property.

3  It doesn't own the hospital building, the old hospital building

4  that used to be operated as a hospital by Vidant.  Vidant no

5  longer owns or operates a licensed hospital on that property.

6  Vidant would not have the legal ability to comply with a TRO

7  regarding the property because the property is not Vidant's.

8  So there's no status quo for Vidant to preserve.

9         The personal property, I just wanted to mention

10  briefly, Mr. McSurely had referenced personal property that was

11  being apparently taken from the property that Pantego Creek

12  owns.  And that was referenced in the complaint as well.  And

13  that is the removal of personal property from the former

14  hospital site by third party vendors.  Those were items of

15  equipment that were leased to Vidant when they were operating a

16  hospital.  Obviously third party vendors are coming to pick up

17  that old equipment that used to be used.  He mentioned a crane

18  that was seen on site.  That was to remove some oxygen

19  suppliers' equipment.  So those are all third parties coming to

20  remove equipment.

21         And if I could, Your Honor, the agreement that was

22  indicated in the mediation agreement to convey the property to

23  Pantego Creek from Vidant was, as I mentioned, pursuant to a

24  pre-existing agreement that was entered into between Vidant and

25  Pantego Creek in 2011 when Vidant took over the operation of

the hospital and then was revised in 2014.

Vidant has been apprising the Plaintiffs for roughly a year that Vidant would need to close Pungo Hospital and open a smaller facility that would fit the community needs and would be consistent with what was a low inpatient volume, the low E.D. volume and the difficulty in recruiting enough physicians for the community.

So in conclusion, Your Honor, this is really not Vidant's fight in terms of the TRO here because we don't own the property. We don't know how Plaintiffs have shown that there's a likelihood of success on the merits. We don't know how -- we don't see anything where they have indicated that there's an immediate and irreparable loss or harm that is of concern. And certainly from Vidant's perspective the Plaintiffs cannot, we don't believe, tell third party vendors they can't come and pick up their equipment nor can they --

THE COURT: Vidant can't but I can if I maintain the status quo. That means whatever is there stays there until this matter can be heard.

MR. QUALLS: Your Honor, we understand that but we don't think that Vidant can exercise rights over the real property that it doesn't own so that's my main point.

THE COURT: All right.

MR. QUALLS: So we would ask that you deny the TRO request and if you do grant the TRO request that you do

1  not grant relief against Vidant that it cannot perform because

2  we do not own the property.  Thank you, Your Honor.

3                    THE COURT:  Is Vidant security still there?

4                    MR. QUALLS:  On the property?

5                    THE COURT:  Yes.

6                    MS. JOHNSTON:  May I?

7                    THE COURT:  I don't care who answers.  The

8  question is:  Is Vidant still having their security force there

9  on that property, yes or no?

10                    MS. JOHNSTON:  Not on the property that is

11  the hospital proper as going forward.  Let me explain that.

12                    THE COURT:  Whose security force is there

13  now?

14                    MS. JOHNSTON:  Vidant's security force has

15  been trying to maintain the building as it is, but let me

16  explain.  There is an easement around the hospital property.

17                    THE COURT:  All right.  That easement was

18  there before.

19                    MS. JOHNSTON:  For the Helipad.  So it's

20  got interests in terms of making sure that Helipad is secure.

21  But if -- at the end of the day, the desire was to make sure

22  that nothing happened to that building.

23                    THE COURT:  Well, if that was the desire of

24  Vidant to make sure that nothing happened to that building, you

25  know, you're arguing two different points.  One point Vidant

1  wants to make sure nothing happens and another side you want to

2  say, well, Vidant has no interest in it; whatever happens

3  happens.  And so I think that that's two inconsistent ways and

4  we going to do this.

5         August the 25th.  I'm going to let the status quo

6  stay as it is right now.

7         We're going to do as you ask, sir.  We're going to

8  join in the interest of justice all the parties that have an

9  interest in this matter.  Pungo will be brought into this

10  lawsuit and made a party thereto along with its board.  So now

11  we got everybody.  If we now have everybody and the status

12  stays as it is now, we'll fur, either through mediation or

13  otherwise, where we go from here.

14         Ask Bill where am I on the 25th.  Where am I in that

15  district, 25th of August.

16  (Discussion between the Court and Trial Court Administrator was

17  held off the record.)

18                   THE COURT:  All right.  Talk to me if you

19  will about what bond do you want.

20                   MR. GRADY:  Well, judge, that's a great

21  question.  I couldn't even begin to tell you.  We haven't even

22  been able to --

23                   THE COURT:  Tell you what we'll do.  We'll

24  adjourn right now.  You two go talk to one another which I

25  thought you all were going to do over the break.  You know

1    these issues would come up.  You come back to me in about ten

2    minutes and give me an idea of how you're trying to show me

3    that you're trying to work to resolve this matter.  I'll stand

4    down for ten minutes.

5                    MR. GRADY:  Thank you, Your Honor.

6            (Court stood at ease from 3:37 p.m. until 4:12 p.m.)

7                    THE COURT:  All right.  Did you all make an

8    agreement on bond?

9                    MR. GRADY:  No, sir.

10                   MR. TATE:  But we do believe we have a

11   range; is that fair to say?

12                   MR. GRADY:  I think so, Your Honor.

13                   THE COURT:  All right.  Give me the range.

14                   MR. GRADY:  I'll speak out of turn.  We

15   have owned the property for a couple weeks and really have no

16   idea.  Vidant indicates that the out-of-pocket expenses I

17   believe, Mary Beth, are $60,000 a month so you divide by two

18   that's $30,000.  Counsel has a different number.

19                   MR. TATE:  We called our -- the main thing

20   we want is the utilities to be left on and we called our, the

21   town -- the financial officer of the town and he said that the

22   bill, typical bill, last month's bill was $29,000.

23                   THE COURT:  So 29 and 30, ain't much

24   difference; is there?

25                   MR. GRADY:  I think we're saying $30,000

1  for two weeks and he's saying --

2                    MR. TATE:  Oh, yeah.  We're saying 29,000 a

3  month and they're saying 30,000 for two weeks.

4                    MR. McSURLEY:  We're saying fourteen five

5  versus 30.

6                    MR. TATE:  14,500 for two weeks.

7                    THE COURT:  Are you saying 14,500 or are

8  you saying one thousand four?

9                    MR. McSURLEY:  14,500 is half 29,000.

10                   THE COURT:  All right.  Just want to make

11  sure where you are.  All right.

12        Set bond at $15,000.  You will enjoin the order to

13  make sure that you add the other party as requested by the

14  other side.  Sir, I have no say to where you move it to.

15  That's your right.  You don't need my permission.

16        MR. GRADY:  Your Honor, where are we going to be on

17  the 25th if I may ask?

18                   THE COURT:  I am holding court, return it

19  back to me.  I will be in the district Washington County which

20  is Plymouth.  I believe that is ten days per the statute.  The

21  actual -- it's actually more but the 24th would be the actual

22  date so according to the rules we move it over to Friday, I

23  mean to Monday, from that Sunday to Monday.

24                   MR. McSURELY:  We have an order for you,

25  Your Honor.  Do you want to see it?

1          THE COURT:  Did you show it to the other

2    side?

3          MR. McSURELY:  We just did.

4          THE COURT:  What do you mean you just did?

5    Did you show it to them back there?

6          MR. McSURELY:  Yeah.

7          THE COURT:  Hand it up.  Does it include

8    the Pungo District as requested?

9          MR. GRADY:  No, sir, it does not.

10          MR. TATE:  We'll put that in.

11          THE COURT:  That's a part of the order.

12          MR. GRADY:  Perhaps we could make the

13    adjustments necessary and then tender it to you shortly.  We

14    all know what Your Honor wants us to do and not do between now

15    and --

16          THE COURT:  The only problem is if I die on

17    the highway tomorrow morning I want my order in place.  I'm

18    getting ready to hit the road so -- Bill, let them have the

19    computer in the office if they can, can they use that?

20          MR. NICHOLLS:  Sure.

21          THE COURT:  There's a computer available in

22    my office.  I'll sit here until you get it done and when I

23    leave here I'm going to be through with this matter until I

24    come back, if it's still in my jurisdiction.

25          MR. GRADY:  Thank you, Your Honor.

1                    (Court stood at ease.)

2                        THE COURT:  Anything further, ladies and

3     gentlemen?

4                        MR. GRADY:  Judge, thank you.

5                        THE COURT:  Thank you so very much.

6                        MR. McSURELY:  Thank you.

7                        MR. TATE:  Thank you.

8                  (The foregoing proceedings concluded at 4:28 p.m.)

9                       **[END OF TRANSCRIPT]**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**CERTIFICATE**

STATE OF NORTH CAROLINA

COUNTY OF BEAUFORT

    I, LORETTA PICHEY, Registered Professional Reporter, the officer before whom the foregoing proceeding was taken, do hereby certify that said hearing, pages  1  through  24  inclusive, is a true, correct and verbatim transcript of said proceeding.

    I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this proceeding was heard; and further, that I am not a relative or employee of any attorney or counsel employed by the parties thereto, and am not financially or otherwise interested in the outcome of the action.

_____
LORETTA PICHEY, R.P.R.
Official Court Reporter

STATE OF NORTH CAROLINA     IN THE GENERAL COURT OF JUSTICE
                               SUPERIOR COURT DIVISION
COUNTY OF BEAUFORT            CASE NO.

_____
                               )
TOWN OF BELHAVEN, NC; and THE   )
NORTH CAROLINA NAACP STATE      )
CONFERENCE OF BRANCHES, THE     )
HYDE COUNTY NAACP BRANCH, and  )
THE BEAUFORT COUNTY NAACP BRANCH, )
                               )    **CERTIFICATE OF DELIVERY**
         Plaintiff,        )
                               )
vs.                          )
                               )
PANTEGO CREEK, LLC; and       )
VIDANT HEALTH, INC.,         )
                               )
         Defendants.       )
_____)

       This is to certify that the transcript in the
above-entitled case was requested of Loretta Pichey on the
14th day of August 2014 and was delivered to the attorney as
indicated below on the 23rd day of August 2014.

_____
LORETTA PICHEY

Arey W. Grady, III, Esquire
agrady@nclawyers.com